Eastern Dist.
*March*, 1829.

*LAWRENCE* vs. *McFARLANE.*

LAWRENCE
*vs.*
McFARLANE
The causes
for which a
reduction in
the price of a
slave can be
claimed are
the same as
those for
which the re-
*cission of the*
sale may be
demanded.

APPEAL from the court of the parish and city of New-Orleans.

MARTIN, J. delivered the opinion of the court. This is a redhibitory action on the sale of a slave, stated to be affected with a rheumatism to such a degree as to render her perfectly useless and incurable at the time of the sale.

The defendant pleaded the general issue, and that the plaintiff, at the time of the sale, knew the slave to be old and afflicted with the diseases attendant on her age, which were increased by a prevalent epidemic.

The plaintiff had judgment, and the defendant appealed.

Bein, a witness for the plaintiff, deposed, he sold the slave to the defendant for $250, (the price paid by the plaintiff for her)—she was sick at the time for about a week, and the defendant attended her. She complained of rheumatism, but he thought she was more lazy than sick. He owned her during two or three years. She complained every third or fourth month, but never laid by, till her last sickness. She did not then complain of rheumatism, and

the witness thinks she had the venereal. She
was able to do a good deal then, and went to market daily, washed for the children and cooked.

On his cross examination he added he saw her after he sold her. She appeared in better health than he ever saw her: he had paid $350 for her.

Boyd, an auctioneer, called by the plaintiff, deposed, he sold the slave for the defendant. She appeared old and decrepid, and walked badly. He thinks she had been offered for sale several times before. He sold her under a full guarantee, by order of the defendant, who told him she complained of being sick, but was able to do the house work. The witness thinks that, for a woman of her age, she brought as much as if she had been healthy.

Vance, a witness of the plaintiff, deposed, he owned the slave for a year, and sold her to Bein. Her general health was not very good. She frequently complained of rheumatism; but he thought her more lazy than sick. He bought and sold her with warranty.

Dr. Davidson deposed he owned the slave during the years 1819 and 1820. He sold her

because she smoked a great deal, and was dirty in her kitchen, but was sound and healthy. He does not think he ever gave her a dose of medicine. In the summer of 1828, a rheumatic fever prevailed in New-Orleans, which was most generally epidemic, affecting persons of all ages, sexes and colours, especially the old and those who previously had rheumatic complaints. She drank freely, but was not a drunkard: she never complained of rheumatism while he owned her.

Short deposed he saw the slave soon after the plaintiff purchased her, and has since seen her often. She has been lame all the time, and during the greatest part of it very lame: her ancles are much swollen, and she has not been able to do any work of consequence.— The plaintiff has been compelled to hire another person to do the work he expected from her. She, at times, is unable to walk without a cane. She complained much of the rheumatic fever during the late epidemic, but not more than before.

Dr. Debow deposes that, in April or May last, he was called by the plaintiff to the slave, and found her affected with a chronic rheu-

matism, under which he thinks she has labour- <span>Eastern Dist <i>March</i>, 1829.</span>
ed for some time. Her case appeared of a
bad character, and her disease may become <span>LAWRENCE <i>vs.</i> McFARLANE</span>
incurable in aged persons who have laboured
under it for a considerable time. He visited
her several times, and found her by no means
improved. Her limbs are much swollen, and
he believes she has not been able to do the
house work since he saw her.

On the cross examination he added, he told
the plaintiff she might be cured by a course of
medicine, which might take a month. In a wo-
man of her age, a rheumatism such as that which
she had might come on within a month or two.
The epidemic that prevailed last summer ag-
gravated a case like hers very much. He does
not recollect doing any thing for her, but exter-
nal applications. He does not think he ob-
served much swelling in her limbs when he
first saw her; it has occurred principally since
the late epidemic. He has known a few cases
in which the epidemic, when there was pre-
vious disease, has left as much swelling as
there was in this slave, but the patients were
not disabled from their business. He thinks

Eastern Dist.
*March*, 1829.

LAWRENCE
*vs.*
McFARLANE

the slave had a rheumatic complaint from the first time he saw her.

It does not appear to us that the facts in evidence state a redhibitory case. The disease, according to the testimony of the plaintiff's own witness, is such that would yield to a course of medicine, within a month. We have the testimony of most of the persons who have owned the slave since the year 1819. None of them considered her as prevented from rendering services to them as other slaves, on account of her rheumatic complaint, except the last but one, who sold her for $100 less than he had paid for her; and he swears he saw her in the hands of the defendant in a very good state of health. Slaves being human beings are necessarily liable to disease, and in old age to rheumatic affections particularly. The plaintiff bought this woman in February, and although some of his witnesses depose she was almost immediately taken with a swelling in her limbs, and thus disabled from labor, yet he called for no medical aid till April or May, and then did not accept the offer made him of a cure by a course of medicine that would have lasted one month. In the

mean while a violent epidemic raged which brought a rheumatic fever on the healthy and considerably aggravated those of the afflicted. It is not extraordinary that a decrepid old woman, sold for $250, whose owner contented himself with a few external applications, while the physician he had called recommended a course of medicine that would cure her, should be disabled by her disease, long left to itself, from labour, and smart severely under the late epidemic.

The appellee's counsel has urged that, admitting the case is not a redhibitory one, he may have damages by a reduction of the price on an action *quanti minoris,* as the petition concludes with a prayer for a general relief. In the case of *Millar* vs. *Coffman, ante* 556, we lately determined that the Civil Code, 2522, having provided that the action for the reduction of the price was subject to the same rules and limitations as the redhibitory, the plaintiff in the former was bound to establish every fact which was necessary to support the latter. It follows then, as it appears that the disease with which the slave was afflicted was casual, and it is not shown that at the time of the sale

*Eastern Dist March,* 1829.

LAWRENCE
*vs*
McFARLANE

LAWRENCE
vs.
McFARLANE

she was so sick as to render her services abso-
lutely useless, or so much so that the vendee,
had he known the state of her health, would
not have bought her, he cannot complain and
demand a reduction of the price.

It is therefore ordered, adjudged and de-
creed that the judgment of the parish court be
annulled, avoided and reversed, and judgment
entered against the plaintiff as in a case of non
suit, with costs in both courts.

*Christy & Cenas* for plaintiff—*Preston* for
defendant.